UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
MILITARYHOMELINK.COM, LLC,         )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    C.A. No. 18-011 WES
                                   )
HUNT COMPANIES, INC.; and          )
HUNT MILITARY COMMUNITIES MGMT.,   )
LLC,                               )
                                   )
        Defendants.                )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

I.  Introduction

Before the Court is Defendants Hunt Companies, Inc., and Hunt Military Communities Management, LLC's (collectively, "Hunt" or "Defendants") Motion to Dismiss (ECF No. 26) ("Motion") Plaintiff MilitaryHomeLink.com's ("MHL") Third Amended Complaint (ECF No. 25). In a hearing on July 23, 2018, the Court denied Defendants' Motion and indicated that its reasoning would be explained in this brief memorandum and order.

II. Background[1]

Defendants provide housing to military and civilian families located near or within military bases. (Third Am. Compl. ("Compl.") ¶ 11, ECF No. 25.) Plaintiff MHL launched and kept up a website to serve Defendants, which included "a comprehensive forms and documents solution (the 'Document Centers'), along with relevant community information for United States military personnel and/or their respective family members." (Id. ¶ 12.)

MHL alleges that, beginning in 2008, it agreed orally with Defendants to provide access to and use of its web portal, while creating and maintaining Document Centers for each of Defendants' military properties. (Id. ¶ 13.) Specifically, the parties agreed to two stages of work: in stage one, MHL created unique Document Centers for Defendants' military housing properties, making the transmission of housing documents for military families more efficient; then, in stage two, MHL regulated and maintained Defendants' Document Centers and provided around-the-clock customer service support for applicants. (Id. ¶ 14.) In exchange, Defendants agreed to provide MHL daily move-in reports for the military properties, which allowed MHL to earn lucrative commissions "by

---

[1] Because this is a motion to dismiss and the Court "assume[s] the truth of all well-pleaded facts and indulge[s] all reasonable inferences therefrom that fit the Plaintiff's stated theory of liability," Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002), this section describes the facts from the vantage point of MHL.

2

cross-selling related third-party provider products and services to [Defendants'] housing prospects." (Id. ¶ 16.)

MHL alleges that the parties' relationship persisted for a number of years without incident. (Id. ¶¶ 21, 23.) This was true, despite the parties' failure to memorialize the Document Centers contract in writing, as MHL had requested. (Id. ¶ 25.) Plaintiff alleges that "Hunt strung MHL along for many months by promising to review and sign a contract and preying upon MHL's mistaken belief of a long-term relationship with Hunt," (id. ¶ 39.); and further, that "[s]ince at least February 2017, however, and presumably much earlier, unbeknownst to MHL, Hunt was developing its own online document solution, had no intention of reviewing and signing a contract and planned to terminate its relationship with MHL." (Id. ¶ 40.)

In September of 2017, after nearly nine years of working together, MHL noticed a major change: "its daily new housing application submissions for Hunt properties suddenly went from approximately 30-40 per day to zero." (Id. ¶ 46.) MHL discovered that Defendants removed MHL from their website without any notice, and replaced it with their own, newly minted document platform, one that appeared substantially similar to MHL's. (Id. ¶ 47.)

MHL sums up: "with no advance notice at all, Hunt terminated the Document Services Contract and cut over to its own online document solution that it had been surreptitiously developing while

3

at the same time concealing its plan to terminate the parties' contract and misrepresenting its intent to review and sign a contract and continue the relationship." (Id. ¶ 57.) And from these factual allegations, MHL advances nine causes of action against Hunt.

III. Legal Standard

In assessing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the district court must 'accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory.'" Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). To overcome a motion to dismiss, a complaint must possess "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

IV. Discussion

Hunt volleys several arguments in attempt to undercut MHL's breach-of-contract claim (Count I); none is persuasive.

A. Breach of Contract (Count I)

First, Hunt suggests that no contract was formed because the "alleged promises are so 'indefinite' that they lack 'sufficient

explicitness so that a court can perceive what are the respective obligations of the parties." (Defs.' Mem. in Supp. Mot. to Dismiss ("Defs.' Mem.") 18 (quoting Soar v. Nat'l Football League Players' Ass'n, 550 F.2d 1287, 1289-90 (1st Cir. 1977)).

MHL sets forth sufficient facts to fulfill "the relaxed pleading standards of Rule 8, which apply to claims for breach of contract." Western Reserve Life Assur. Co. of Ohio v. Conreal LLC, 715 F. Supp. 2d 270, 288 (D.R.I. 2010). "A court asked to declare a contract binding must determine that the contract is definite enough that the court can be 'reasonably certain' of the scope of each party's duties." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 395 (D.R.I. 1998). MHL's allegations allow the Court to do just that: in consideration for MHL's website development and maintenance work, specifically as to the Hunt Document Centers, and its customer/employee support services, Hunt agreed to provide MHL with daily move-in reports for its properties. These allegations more than suffice at this stage to allege what is required to form a contract, i.e., "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." See DeAngelis v. DeAngelis, 923 A.2d 1274, 1279 (R.I. 2007); see also Restatement (Second) of Contracts § 33(2) (Am. Law Inst. 1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

In the end, "the resolution of a dispute concerning if and when contract negotiations materialize into a mutual understanding and result[] [in a] binding contract is ordinarily a question of fact for the factfinder." Cote v. Aiello, 148 A.3d 537, 546 (R.I. 2016) (quoting Marshall Contractors, Inc. v. Brown University, 692 A.2d 665, 670 (R.I. 1997)). For that reason, Hunt's motion to dismiss Count I is denied.[2]

B. Breach of the Covenant of Good Faith and Fair Dealing (Count II)

Whether MHL states a claim on this count largely turns on whether it states a claim for breach of contract. See Bisbano v. Strine Printing Co., 737 F.3d 104, 111 (1st Cir. 2013) (In Rhode Island, a claim for violation of a covenant of good faith and fair dealing "only comes into existence ancillary to a binding contract.") (citing Centerville Builders, Inc. v. Wynne, 683 A.2d 1340, 1342

---

[2] Hunt's other arguments with respect to Count I, including that the claim is barred by the statute of frauds, fare no better. In this context, "[t]he question is not whether performance 'would likely not occur' within one year, but whether performance cannot occur within one year." Gerffert Co. v. William J. Hirten Co., 815 F. Supp. 2d 521, 527 (D.R.I. 2011). "Under Rhode Island law, a contract of uncertain duration and terminable at the will of either party is not within the statute of frauds, because it 'could by possibility [be] fully performed within a year from the time it was made.'" Gupta v. Customerlinx Corp., 385 F. Supp. 2d 157, 165-66 (D.R.I. 2005) (quoting Powless v. Pawtucket Screw Co., 352 A.2d 643, 646 (R.I. 1976)). Because it is not impossible that the parties' agreement could terminate, by some foreseeable reason, sooner than one year, MHL's claim does not violate the Statute of Frauds.

6

(R.I. 1996) (per curiam)). The facts as alleged suffice to clear Hunt's motion on MHL's breach-of-contract claim, and to support MHL's Count II claim as well.

C. Fraud Claims (Counts III-V)

MHL's claims of misrepresentation (Count III), fraudulent concealment (Count IV), and fraudulent non-disclosure (Count V) also survive. Rule 9(b) of the Federal Rules of Civil Procedure provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." In other words, the complaint must specify "the time, place, and content of an alleged false representation." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996); see also Backman v. Smirnov, No. 08-11148-RGS, 2008 WL 4874949, at *2 (D. Mass. Nov. 12, 2008) ("Rule 9(b) does not impose a duty on [the plaintiff] to recount each and every representation that he now alleges was made fraudulently – he need only plead fraud with the particularity necessary to place defendants on fair notice."). In addition, the First Circuit has said that the requirement of specificity "extends only to the particulars of the allegedly misleading statement itself. The other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).

The complaint's allegations detail a "string along fraud scheme" sufficient to clear Rule 9's specificity requirement.

MHL also states a claim for fraudulent concealment (Count IV) and fraudulent non-disclosure (Count V). "Liability for fraudulent concealment arises where one party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information." French v. Isham, 801 F. Supp. 913, 922 (D.R.I. 1992). MHL has specifically alleged that Hunt intentionally prevented MHL from realizing its plan to terminate the parties' Document Centers Contract. This is enough to plead fraudulent concealment. See Johnson v. Capital Offset Co., No. 11-cv-459-JD, 2013 WL 5406613, at *5 (D.N.H. Sept. 25, 2013) (fraudulent concealment applies when "the defendant intentionally concealed or suppressed a known fact for the purpose of misleading the plaintiff when the plaintiff did not have equal means of obtaining the information").

A fraudulent-non-disclosure claim requires a duty to disclose. The Restatement (Second) of Torts § 551 (Am. Law Inst. 1977) provides:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> . . .
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

8

> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

MHL sets forth facts that fit this standard with specificity: e.g., the fact that MHL did not disclose that it intended to terminate the parties' relationship and had planned not to enter into a written contract despite repeated representations to the contrary. Hunt's arguments to the contrary inappropriately ask this Court to draw inferences in its favor. See, e.g., Van Wagner Bos., LLC v. Davey, 770 F.3d 33, 40 (1st Cir. 2014) ("At this early stage, we are bound to accept the well-pleaded factual allegations in the complaint and draw all reasonable inferences therefrom in [plaintiff's] favor."). Accordingly, Hunt's motion as to Counts III-V is denied.

D. Tortious Interference (Count VI)

Hunt offers two reasons to dismiss this count. First, that the complaint lacks allegations "that Hunt contacted any of MHL's customers to discourage or prevent them from dealing with MHL"; instead, the claim entirely hinges on Hunt's refusal to deal with MHL. (Motion 33.) Second, Hunt argues, "Count VI does not allege that Hunt acted with 'malice' in the sense that it acted with the

9

'intent to harm' MHL rather than 'with the intent to benefit itself.'" (Id. at 34.)

Hunt's first argument fails. "[I]nterference by the defendant with the plaintiff's performance of its contractual obligations with the third party" may suffice for tortious interference. O'Donnell v. Boggs, 611 F.3d 50, 54 (1st Cir. 2010).

Hunt's second argument fails too because determining whether Hunt's actions were justified is a fact-driven question. Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of R.I., 997 F. Supp. 2d 142, 164 (D.R.I. 2014) (citing Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 628 n.3 (R.I. 2000)); Getty Petro. Mktg. v. 2211 Realty, LLC, No. 11-40003-FDS, 2012 WL 527655, at *6 (D. Mass. Feb. 16, 2012) ("Of course, it is possible that Green Valley acted pursuant to legitimate business considerations and did not intend to harm defendants' business relationship with their customers . . . . Such issues, however, cannot be decided on a motion to dismiss.").

E. Promissory Estoppel (Count VII)

The elements of promissory estoppel in Rhode Island are: (1) "A clear and unambiguous promise;" (2) "Reasonable and justifiable reliance upon the promise;" and (3) "Detriment to the promisee, caused by his or her reliance on the promise." Cote, 148 A.3d at 547. MHL plausibly alleges this standard in this way: (1) Hunt, by its conversations and conduct, repeatedly promised MHL that it would take steps to enter a written contract and continue the parties'

long-term relationship (see Compl. ¶¶ 43, 44); and (2) (which is not disputed) MHL reasonably relied on Hunt's promises to its detriment, (see id. ¶¶ 97, 99, 100). Thus, Hunt's motion to dismiss as to promissory estoppel is denied (Count VII).

F. Quantum Meruit (Count VIII) and Unjust Enrichment (Count IX)

"To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." S. Cty. Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210-11 (R.I. 2015). Likewise, "a plaintiff may recover in an action in quantum meruit if the plaintiff can show that a defendant derived some benefit from the services and would be unjustly enriched without making compensation therefor." Id. at 211. "[A]ctions brought upon theories of unjust enrichment and quasi-contract are essentially the same." Accordingly, proof of quantum meruit and unjust enrichment implicates the same three elements. Id.

Plaintiff's allegations with respect to both claims clears the plausibility threshold. As to quantum meruit, MHL alleges that it "provided valuable services to Hunt in connection with the Hunt Document Centers," that MHL was not paid the "full value" of its services, and that Hunt was unjustly enriched in light of its

11

wrongful conduct, namely its "string along fraud scheme" where it repeatedly made material misrepresentations and omissions to MHL. (Compl. ¶¶ 45, 103, 105, 106.) Similarly, with respect to unjust enrichment, MHL alleges that it "conferred a benefit on Hunt by providing it valuable resources and property in the form of the Hunt Document Centers as well as MHL's maintenance and support work associated with the Hunt Document Centers" (Compl. ¶ 110), and for the same reasons as above, Hunt's wrongful conduct has led to its unjust enrichment. These factual averments suffice to state claims for quantum meruit and unjust enrichment; consequently, Defendants' motion as to these counts (Counts VIII and IX) is denied.

V. Conclusion

For these reasons, Hunt's Motion to Dismiss (ECF No. 26) is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date: August 28, 2018